IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br><br>*Plaintiff,*<br><br>vs.<br><br>INSURANCE SUPERMARKET INC,<br><br>*Defendant.* | Case No. 1:24-cv-10549<br><br>Judge Andrea R. Wood<br>Magistrate Judge Jeffrey Cole<br><br>**Hearing: April 30, 2025, at 9:30 AM** |

**MOTION FOR DEFAULT JUDGMENT**

Plaintiff, Jorge Alejandro Rojas, moves this Court, pursuant to Fed. R. Civ. P. 55(b), for an entry of default judgment in the amount of $202,000.00 against Defendant Insurance Supermarket Inc.

**I. Statement of Facts**

This case arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305.

Defendant: Insurance Supermarket Inc is a Delaware entity, with a principal place of business in Florida. Dkt. 1 ¶ 10. Defendant[1] markets final expense insurance products to Illinois residents, including Plaintiff, who resides within this District. *Id.* ¶ 9; Exhibit 1, Declaration of J. Rojas ("Rojas Dec'l) ¶ 3. Defendant has placed calls to a telephone number with an "in-district," 312 area code. Dkt. 1 ¶ 29; Rojas Dec'l ¶ 4.

Posture: Plaintiff commenced this action on October 15, 2024. Dkt. 1. Plaintiff subsequently served the Defendant via its registered agent on December 9, 2024, utilizing a process server. Dkt. 7. Defendant lists its registered agent as Harvard Business Services, Inc 16192 Coastal Hwy Lewes, DE, 19958. Dkt. 1 ¶ 10. Exhibit 2 is a copy of the foreign corporate

---

[1] Plaintiff also sued the officers of Defendant, but voluntarily dismissed them without prejudice. Dkt. 15.

registration filed with Florida. Answer was due December 30, 2024. On January 1, 2025, Plaintiff sought the Clerk enter default. Dkt. 10. On March 19, 2025, Plaintiff made an oral request for FED. R. CIV. P. 55(a) default, which the Court entered. Dkt. 17.

Plaintiff is unaware of Defendant being an infant, in the military, or incompetent. Rojas Dec'l ¶ 5.

Liability: Plaintiff received at least one hundred and one (101) calls from Defendant[2]. Plaintiff alleges the calls were made using an automatic telephone dialing system ("ATDS") and/or a pre-recording. Defendant uses telemarketing to market products to individuals, like Plaintiff, who have not consented to the telephone calls, advertising final expense/burial insurance services. Dkt. 1 ¶ 4.

Injury: Plaintiff did not consent to any of the calls. Dkt. 1 ¶ 153; Rojas Dec'l ¶ 6. Plaintiff finds telemarketing calls to be invasive of privacy, annoying, harassing, and take away from otherwise useful purposes of his phone. Dkt. 1 ¶ 171; Rojas Dec'l ¶ 7. The consent required to have made telephone calls with an ATDS or pre-recorded voice would have required prior express written consent from Plaintiff, which Defendant does not have.

Damages: Damages for TCPA violations are set by statute at $500 per violation, which can be up to trebled if the Court finds the conduct to be knowing and/or willful. A more detailed explanation of the damages follows this section. Plaintiff alleges that of the 101 known calls:

- 101 were placed using an ATDS or a pre-recorded voice to a telephone line which is charged on a per call and per minute basis in violation of 47 U.S.C. § 227(b)(1)(A)(iii) (Count 1) [$151,500.00 with trebling];
- 101 were telemarketing calls made in violation of the Illinois ATDA, due to the use of a pre-recorded voice without consent (815 ILCS 305/30(b)), tampering or interfering with Caller ID (815 ILCS 305/15(d)), and not providing complete identifying information (815

---

[2] Unfortunately, given the posture of this case in that Plaintiff does not have the benefit of discovery to identify for example whether Defendant called Plaintiff more times. To the extent that Defendant later appears and/or sets aside any entry of default and/or default judgment, Plaintiff anticipates engaging in the necessary discovery to identify whether Defendant made more calls to Plaintiff.

Plaintiff further alleges that he has received more calls after October 15, 2024, but this action only seeks recovery for those made on or before October 15, 2024, as identified in Plaintiff's Complaint.

ILCS 305/15(b)). 815 ILCS 305/30(c-5) authorizes the recovery of $500 in statutory damages per violation in addition to actual damages. (Count 2) [$50,500.00];
Plaintiff alleges the TCPA violations were made in a knowingly and/or willful manner. Dkt. 1 ¶¶ 150, 152, 159, 192. Plaintiff seeks $202,000 in statutory damages against Defendant in total under the TCPA and ATDA.

## II. Argument and Authorities

### a. **Preliminary Factors**

<u>Venue and Jurisdiction:</u> The TCPA is a federal statute, and this Court has subject matter jurisdiction. *Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368, 372 (2012). The Court has jurisdiction under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's state law claims, which arise under the same facts as the TCPA claims.

Determining whether personal jurisdiction exists "requires a two-part inquiry: (1) whether the state statute allows jurisdiction, and (2) whether the assertion of jurisdiction complies with constitutional due process standards." *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990).

The Illinois long-arm statue provides that a person is subject to the jurisdiction of Illinois courts for any cause of action arising from the commission of a tortious act within the state. 735 ILCS 5/2-209(a). "For purposes of the Illinois long-arm statute, the Illinois courts construe the phrase 'tortious act' broadly to encompass any act that involves a breach of a duty owed to another and makes the person committing the act liable to the other for damages." *Czarnowski Display Servs., Inc. v. Bell*, No. 03 C 5782, 2004 WL 1613553, at *3 (N.D. Ill. July 19, 2004).

Alleged violations of the TCPA and ATDA are tortious acts. *Smith v. Royal Bahamas Cruise Line*, No. 14-CV-03462, 2016 WL 232425, at *2 (N.D. Ill. Jan. 20, 2016).

With respect to the second requirement, due process requires that a nonresident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Specific jurisdiction may be exercised over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984). In determining whether specific personal jurisdiction exists, a court must engage in a three-step

3

inquiry: "(1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; [and] (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

Here, Plaintiff alleges that Defendant called Plaintiff, an Illinois resident, at his Illinois area code telephone number, and even used telephone numbers with Illinois area codes on the Caller ID. This was done not just once, or a few times, but at least 101 times. In the context of TCPA cases, calling a telephone number with an area code within the district satisfies personal jurisdiction requirements in other districts. *See Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) ("In TCPA actions, courts have consistently held that the second and third prongs of the *Calder* test are satisfied when defendants contact numbers with area codes associated with that state.").

### b. Default

Default judgment establishes a defendant is liable, as a matter of law, for the causes of action alleged in the complaint by the plaintiff. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). In the case of a default, this circuit follows the rule that "the well-pleaded allegations of the complaint relating to liability are taken as true," and those "relating to the amount of damages suffered ordinarily are not." *DiMucci,* 879 F.2d at 1497 (citing *Dundee Cement Co v. Howard Pipe Concrete Prod.,* 722 F.2d at 1323 (7th Cir. 1983)). When a default judgment is entered, facts alleged in the complaint may not be contested. *See Thomson v. Wooster*, 114 U.S. 104 (1885); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

Damages must be proved unless they are liquidated or capable of calculation. *See DiMucci,* 879 F.2d at 1497 (citing *Dundee Cement Co.,*722 F.2d at 1323). *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990). The damages provided under the TCPA are liquidated damages. *Universal Underwriters*, 401 F.3d at 881. A default judgment regarding damages may be entered without a hearing when "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.*, 722 F.2d at 1323.

Similarly, the ATDA provides "In addition to the damages authorized under subsection (c), a consumer may obtain statutory damages in the amount of $500 per violation." 815 ILCS 305/30(c-5).

In deciding a default judgment, courts consider "[t]he amount of money potentially involved, the presence or absence of disputed factual issues or issues of public importance, whether the default was largely technical, whether the plaintiff was substantially prejudiced by the delay, and whether the grounds for default are clearly established . . . ." *Am. Nat'l Bank Trust Co. of Chi. v. Alps Elec. Co.*, No. 99 C 6990, 2002 WL 484845, at *1 (N.D. Ill. Mar. 29, 2002).

### i. Amount of Money Potentially Involved

"[T]he sum of money at stake in [a TCPA] action is particularly appropriate for resolution on default judgment because TCPA damages are specifically set by statute." *Righetti v. Auth. Tax Servs.*, LLC, Civ. No. C-14-0146-EMC, at *7 (N.D. Cal. Jul. 6, 2015). The general rule is that cases seeking statutory damages are well-suited to default judgment, even without a hearing. *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1126 (M.D. Ala. 2004); accord *Frazier v. Absolute Collection Service, Inc.*, 767 F. Supp. 2d at 1354, 1365.

The $500 amount is a compensatory award fixed by Congress and does not require proof of intent or motive. *See Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011); *Penzer v. Transportation Insurance Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005); see also *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

Courts around the country have granted six and even seven-figure default judgments in TCPA cases. *See e.g., Cunningham v. Select Student Loan Help, LLC*, Civ. No. 3:15-cv-00554, at *1 (M.D. Tenn. July 16, 2018) ($249,000); *Cunningham v. Enagic USA, Inc.*, Civ. No. 15-00847, at *1-2 (Jan. 16, 2018 M.D. Tenn.), Dkt. 274 ($259,500).

**Violation 1. TCPA Violation.** The 101 telephone calls violate provisions of section (b) [the prohibition against using an ATDS and/or pre-recorded voice] and entitles Plaintiff to an award of $500 before trebling, for each violation, for a total of $50,500 ($500 x 101) before trebling and $151,500 ($1,500 x 101) after trebling.

To state a cause of action under the TCPA, a plaintiff must allege that (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was

5

charged for the call; and (4) the caller did not have prior express written consent of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

"To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook*, 141 S.Ct. at 1167; *accord Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020), *cert. denied*, 141 S.Ct. 2552 (Apr. 19, 2021) (holding "that the phrase 'using a random or sequential number generator' describes how the telephone numbers must be 'stored' or 'produced'").

In *Zeidel*, this Court held that the complaint satisfied either standard because it alleged sufficient details about the content and nature of the calls to raise a reasonable inference that the defendant used an ATDS. *Zeidel v. YM LLC*, 2019 WL 2161546, at *3 (N.D. Ill. Apr 27, 2015). Specifically, the complaint alleged that the plaintiff received "numerous" unsolicited telemarketing calls made for promotional purposes and placed from two different "spoofed" phone numbers. *Garner v. Allstate Ins. Co.*, 20 C 4693, at *6 (N.D. Ill. Aug. 30, 2021).

Moreover, "a plaintiff need not provide specific, technical details" about the predictive dialer at issue "at the pleading stage." *Id.* (collecting cases). Indeed, courts in this district have come to a consensus that a plaintiff "should not be expected to plead details regarding the technical functionality of the alleged ATDS." *Izsak,* 191 F.Supp.3d at 904; *accord Ananthapadmanabhan,* 2015 WL 8780579, at *4; *Torres,* 2012 WL 3245520, at *3; *Johansen,* 2012 WL 6590551, at *3; *see also Vance v. Bureau of Collection Recovery LLC,* No. 10 C 6324, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011) (drawing a reasonable inference that the defendant used an ATDS from the terms "predictive dialers" and "autodialed"). *Garner v. Allstate Ins. Co.*, 20 C 4693, at *9 (N.D. Ill. Aug. 30, 2021). This trend continues even post *Facebook*. *Rojas v. First Party for Bolingbrook,* No. 23 C 5049, 2024 WL 1254575, at *2 (N.D. Ill. Mar. 25, 2024).

As asserted by Plaintiff, Defendant called a telephone number for which the called party's number is charged per call, Dkt. 1 ¶ 29; Rojas Dec'l ¶ 4, using an automatic telephone dialing system or pre-recorded voice, Dkt. 1 ¶¶ 35-136, 141, 156-157, 160, 164; Rojas Dec'l ¶ 8. Plaintiff's telephone number is charged on a per call and per minute basis. Dkt. 1 ¶ 29; Rojas Dec'l ¶ 4.

As alleged in the Complaint, beginning on June 10, 2024, Plaintiff began receiving telephone calls from a variety of telephone numbers, selling insurance and final expense products or services. Dkt. 1 ¶¶ 35-135; Rojas Dec'l ¶ 9. Plaintiff's Complaint identifies the 101 telephone calls, which all had similar names, voice recordings, etc. For example, in Call 38, the caller provided a website that led to Insurance Supermarket. Dkt. 1 ¶ 72; Rojas Dec'l ¶ 10. Additionally, in Call 46, the caller provided a call back number of 877-878-7007, which was listed on Insurance Supermarket's Better Business Bureau page. Dkt. 1 ¶ 80; Rojas Dec'l ¶ 11; Exhibit 3. In Call 49, the caller provided a website of insurance-supermarket.com. Dkt. 1 ¶ 83; Rojas Dec'l ¶ 12. The website insurance-supermarket.com identifies an address of Cambridge Innovation Center 1951 NW 7th Avenue #600 Miami FL 33136 in the footer, which is the same address Defendant ISI is registered at. Dkt. 1 ¶ 140; Exhibit 4.

For example, Call 1 (along with almost every other call) said that it was "final expense whole life insurance" in the recording, call 38 said it was the sale of a "final expense plan." Given that all the calls had substantially similar recordings, scripts, or proximity to one another, Plaintiff alleges that they are all connected to the ones that indeed provided information about who the caller was (by for example providing a website or call back telephone number that belongs to Defendant).

Plaintiff alleges that details from the calls including longer than natural pauses, beeps, or other tones prior to being connected to a human demonstrate the plausibility of the use of an ATDS at the pleadings stage. Dkt. 1 ¶ 136; Rojas Dec'l ¶ 8. Additionally, Plaintiff requested that Defendant stop calling several times. Dkt. 1 ¶¶ 80, 81, 83, 86; Rojas Dec'l ¶ 14. Plaintiff need not demonstrate that the calls used both ATDS and a pre-recorded voice for purposes of recovery under the TCPA, and Plaintiff has alleged that several of the telephone calls utilized a pre-recorded voice. The basis for which is that many of the calls had the same scripts, names, and voice. Additionally, in some of the calls Plaintiff would attempt to ask the caller questions during the recording and the recording would keep playing. Rojas Dec'l ¶ 15.

Plaintiff provides in Exhibit 7 printouts from his telephone provider, which charges per call and per minute, concerning the records for each alleged call.

Express consent is an affirmative defense on which the defendant bears the burden of proof. *Blow v. Bijora, Inc*, 855 F.3d 793, 803 (7th Cir. 2017); see *In re Rules & Regs Implementing the*

7

*TCPA*, 23 FCC Record 559, 565 (2008); *see also Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). Plaintiff has not provided consent for final expense life insurance or senior benefit phone calls. Dkt. 1 ¶ 158, Rojas Dec'l ¶ 6. And even then, Plaintiff requested the calls stop on multiple occasions (Dkt. 1 ¶¶ 46, 47, 49, 52; Rojas Dec'l ¶ 14).

**Violation 2. ATDA.** 815 ILCS 305. The ATDA is a separate state law that applies. The ATDA prohibits the use of an autodialer or the use of an autodialer to play a pre-recorded message without consent. 815 ILCS 305/30. The ATDA also requires that autodialers not impede with the function of Caller ID for example. 815 ILCS 305/15. In addition to actual damages – which Plaintiff does not seek here – the ATDA allows for $500 per violation. Plaintiff seeks one violation under the ATDA for each call.

**Vicarious Liability.** Although defendant has not appeared to defend, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." Plaintiff believes that to the extent Defendant contracts with another entity for the purpose of outbound dialing and then connects the caller with another entity, the telephone calls are still being made for Defendant's benefit. *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995). On May 9, 2013, the FCC determined that it was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.
> *In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

**Treble Damages.** Courts have routinely awarded treble damages in assessing TCPA damages arising from defaults. Intent to violate the statute is not required for treble damages. *Alea London Ltd. v. Am. Home Servs*., 638 F.3d 768, 776 (11th Cir. 2011) (Holding that malice and wantonness are not required for treble damages in a TCPA action). So long as the Defendant knows the facts underlying the offense, it can be held liable for treble damages—ignorance of the law is no excuse. *Charvat v. Ryan*, 879 N.E.2d 765, 767 (Ohio 2007). That is so even when the defendant made just one illegal call and made a good faith attempt to comply with the law. *Id*. at 768. "The Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Texas v. Am. Blastfax*, 164 F.Supp.2d at 899 (citing *Intercambio*, *Inc*., 3 FCC Rcd. 7247 (1988), 1988 WL 486783).

Plaintiff believes the most compelling evidence of the conduct being knowingly and/or willful here is the fact that defendant has been sued for TCPA violations before. *Rehwinkel v. Insurance Supermarket, Inc*, 1:25-cv-00600 (E.D. Va., April 8, 2025); *Doane v. Insurance Supermarket, Inc.,* 2522CV000218 (Mass. State Courts, March 24, 2025); *Nathen Barton v. EDM Leads LLC, et al.,* 24-2-02134-06 (Wash. State Courts, July 5, 2024, (listing Insurance Supermarket Inc as defendant)); *Crews v. Insurance Supermarket Incorporated*, 2:24-CV-00365 (D. Ariz., February 22, 2024); *Hanson v. Insurance Supermarket Inc*, 4:23-cv-00795 (WD. Mo., November 1, 2023), along with at least 11 others.

Plaintiff also made repeated attempts to have defendant stop calling, but they continued. Dkt. 1 ¶¶ 46, 47, 49, 52; Rojas Dec'l ¶ 14. Additionally, in some of the telephone calls the caller would hang up when Plaintiff attempted to get additional information to identify the caller. Dkt. 1 ¶ 91; Rojas Dec'l ¶ 16. The use of generic names such as "senior benefits," "final expense department" demonstrates that defendant knew what it was doing was unlawful and was trying its hardest to avoid revealing who it was.

### ii. Presence or absence of disputed factual issues or issues of public importance

When a default judgment is entered, facts alleged in the complaint may not be contested. *See Thomson v. Wooster*, 114 U.S. 104 (1885); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

9

Plaintiff lacks the benefit of discovery in this case to further ascertain the number of calls that defendant has made. Given the number of calls, Plaintiff believes that in discovery he would have been able to identify that many more calls were made. As the Supreme Court has held, the public is united in their disdain against telemarketers. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). Plaintiff does not see the failure of Defendant to appear in this case as preventing the resolution of this action at this juncture.

### iii. Whether Default was largely technical

The default in this case has not been largely technical. Defendant has chosen not to appear and defend. Prior to commencing this case, and throughout the litigation, Plaintiff has attempted to contact different attorneys that have represented Defendant in other cases, and has never received substantive replies stating that they would represent Defendant in this matter. Rojas Dec'l ¶ 17. Answer was due December 30, 2024, so plenty of time has elapsed for Defendant to appear.

### iv. Whether the plaintiff was substantially prejudiced by the delay

Plaintiff has been prejudiced by Defendant's failure to respond by being prevented from prosecuting his case, engaging in discovery, and seeking relief in the normal course. *See Angiodynamics, Inc. v. Biolitec AG*, 780 F.3d 429 (1st Cir. 2015). Plaintiff could for example have identified additional telephone calls made by the Defendant or additional liable parties. In the absence of a default judgment, Plaintiff will be prejudiced because he will be unable to obtain a decision on the merits and will be denied relief. Finally, "the TCPA expressly provides for the award of statutory damages, which further supports a finding that [the p]laintiff will be unfairly prejudiced (and [the d]efendant's conduct will not appropriately be deterred) if default judgment is not entered." *Righetti v. Auth. Tax Servs*., LLC, Civ. No. C-14-0146-EMC, at *6 (N.D. Cal. Jul. 6, 2015). Given that there are several cases against Defendant, Plaintiff believes it is even more of a reason for the Court to grant the treble damages in order to deter Defendant's conduct.

### v. Whether the Grounds for default are clearly established

Plaintiff believes the grounds for default are clearly established and that he has demonstrated Defendant have violated the TCPA, as outlined in this motion.

## III. Conclusion

Plaintiff has established Defendant have made several knowingly and/or willful violations of the TCPA and the ATDA, and requests the Court enter a default judgment in the amount of

$202,000.00 against Defendant. Interest is requested pursuant to 28 U.S.C. § 1961(a). Plaintiff will file a Bill of Costs following resolution of this motion.

Respectfully submitted,

Dated: April 20, 2025.  /s/ Jorge Alejandro Rojas

> Jorge Alejandro Rojas
> 557 Cambridge Way
> Bolingbrook, IL 60440
> Rojas.jorge96@gmail.com
> 424-219-1582
> Plaintiff in *Pro Se*

## CERTIFICATE OF SERVICE

The undersigned certifies that he will mail a copy of this motion via USPS to Defendant to their registered agent and last known address.

/s/ Jorge Alejandro Rojas